CC-2002-442                                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>    Peticionario<br><br>        v.<br><br>José N. Loubriel Serrano,<br>Linda Suazo Vázquez<br><br>    Recurrido | Certiorari<br><br>2003 TSPR 2<br><br>158 DPR \_\_\_\_ |

Número del Caso: CC-2002-442


Fecha: 16 de enero de 2003


Tribunal de Circuito de Apelaciones:
                        Circuito Regional I


Juez Ponente:
                        Hon. Carlos Rodríguez Muñiz


Oficina del Hon. Procurador General:
                        Hon. Roberto J. Sánchez Ramos
                        Procurador General

                        Lcda. Marta Maldonado Maldonado
                        Procuradora General Auxiliar


Abogado de la Parte Recurrida:
                        Lcdo. Alex a. Vizcarra Pellot

Materia: Apropiación Ilegal Agravada Artículo 166(A) del Código Penal y Posesión y traspaso de documentos falsificados Artículo 272 del Código Penal.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

   Demandante Peticionario

   v.

José N. Loubriel Serrano,          CC-2002-442
Certiorari
Linda Suazo Vázquez

   Demandado Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 16 de enero de 2003.

En el presente recurso nos corresponde determinar si en una investigación gubernamental donde se le requiere a una institución financiera información referente al paradero de cheques emitidos por el Estado, es necesario notificar al dueño de la cuenta bancaria sobre la intervención gubernamental cuando la investigación aún no está centrada en persona específica, a la luz de la doctrina esbozada en R.D.T. Construction Corp v. Contralor I, 141 D.P.R. 424 (1996). Por entender que la doctrina esbozada por este Tribunal en dicho caso no se extiende a la situación

en el caso de autos, revocamos en parte la sentencia del Tribunal de Circuito de Apelaciones.

**I**

Linda V. Vázquez Suazo y José N. Loubriel Serrano, fueron acusados por apropiación ilegal agravada de fondos públicos, Art. 166(a) 33 L.P.R.A. sec. 4272 (a) y posesión y traspaso de documentos falsificados, Art. 272 33 L.P.R.A. sec. 4592. La investigación que culminó con estas acusaciones, comenzó como producto de unos hallazgos de la policía en el allanamiento del hogar de Miguel Astacio Burns (en adelante, Astacio). Dicha intervención se llevó a cabo al amparo de una orden de registro y allanamiento expedida por autoridad judicial y dirigida contra su residencia. En la misma, se ordenó la ocupación de sustancias controladas, armas, computadoras, celulares, listado de números celulares, sus combinaciones, accesorios y otro material relacionado con la interferencia fraudulenta de líneas celulares.

Al realizar el allanamiento del hogar de Astacio, quien era empleado del Departamento de Hacienda (en adelante Hacienda), la policía encontró además unos documentos relacionados con Hacienda tales como planillas de contribución sobre ingresos y sesenta y nueve (69) comprobantes de retención. Estos documentos fueron ocupados y entregados por la policía a Hacienda quien, a su vez, comenzó una investigación independiente al respecto.

Como producto de esta investigación, se descubrió que los comprobantes fueron cumplimentados en su totalidad con información falsa, tanto la información personal, como los

ingresos reportados y los lugares de trabajo mencionados. Se descubrió además que utilizando esa información falsa se sometieron a Hacienda planillas de contribución de ingreso reclamando reintegro de contribuciones retenidas los cuales Hacienda pagó sin verificar la veracidad de la información sometida.

Luego de cerciorarse de la falsedad de la información contenida en las planillas y de que, como producto de estas planillas falsas, Hacienda había emitido cheques a nombre de estas personas que resultaron inexistentes, ésta dirigió el foco de su investigación a descubrir el paradero de esos cheques, y la indebida apropiación de fondos públicos.

Como punto de partida, Hacienda se concentró en los cheques emitidos por dicha agencia como producto de la radicación de las planillas falsas. Luego de descubrir que las personas a las cuales se les había emitido esos cheques no existían, dirigieron su atención a la poca información contenida por el endoso de los cheques. Al examinar los cheques cancelados Hacienda pudo constatar que no todos los cheques tenían endoso, y que en aquellos que estaban firmados, el endoso era ilegible. Otros contenían solamente el número de cuenta sin nombre alguno, o un número de codificación bancaria el cual sólo tiene significado para la entidad financiera. En algunos de los cheques donde el endoso era legible habían dos nombres, el de la persona a la cual estaba dirigida el cheque, persona que Hacienda ya había descubierto que no existía, y el de Linda V. Suazo Vázquez. Partiendo de la premisa de que esta segunda firma

también pertenecía a una persona ficticia, Hacienda dirigió su atención a los números de identificación provistos por las instituciones financieras que surgían del endoso de los cheques cancelados.

Por no conocer la identidad de los aquí acusados y bajo la premisa de que el nombre de la aquí acusada era otro de los nombres ficticios utilizados, Hacienda emitió sendos "requerimientos legales" en donde le solicitó a los dos bancos que habían procesado los cheques, información referente al número de cuenta en donde habían sido depositados los mismos. Se les requirió, además del número de cuenta en donde habían sido depositados esos cheques, información relacionada con esas cuentas bancarias tales como las hojas de depósito, solicitudes de aperturas de cuentas bancarias y las tarjetas de firmas e identificación de las personas. Por último, se les requirió información sobre todas las transacciones relacionadas con las cuentas bancarias en donde habían sido depositados dichos cheques.

Al obtener la información sometida por los bancos que, entre otras cosas, incluía los estados de cuenta mensuales para los meses de marzo a julio de 1998, en el caso de José N. Loubriel Serrano, y los meses de julio y agosto de 1997, en el caso de la co-acusada Linda V. Suazo Vázquez, en los cuales se reflejaba información referente a otros depósitos e ingresos no relacionados con los cargos aquí imputados, Hacienda conoce, por primera vez, la identidad de los acusados. Es entonces cuando el Ministerio Público somete cargos en contra de José

N. Loubriel Serrano y Linda V. Suazo Vázquez, por seis(6) y nueve (9) cargos, respectivamente, de apropiación ilegal de fondos públicos y de posesión y traspaso de documentos falsificados. Esto por poseer y circular como genuinos, unos cheques emitidos por el Departamento de Hacienda a favor de personas distintas a los acusados.

Estando el caso pendiente para juicio, la defensa presentó una moción de supresión de evidencia donde solicitó del tribunal, en primer lugar, la supresión de todos los documentos obtenidos como producto del allanamiento en el hogar de Astacio. Con relación a estos documentos, la defensa argumentó que los mismos no estaban descritos en la orden de allanamiento ni fueron posteriormente incluidos en el inventario producto de dicho allanamiento. El Tribunal de Primera Instancia declaró la moción no ha lugar por entender que los acusados no tenían ninguna expectativa legítima de intimidad en el hogar de Astacio por no tener interés propietario ni posesorio, ni residir u hospedarse en el mismo. Esta determinación del tribunal de instancia no fue recurrida ni ante el Tribunal de Circuito de Apelaciones ni ante este Tribunal por parte de los acusados.

La defensa solicitó además, la supresión de toda la evidencia obtenida por el Departamento de Hacienda como producto del "requerimiento legal" dirigido a las dos instituciones financieras en donde se habían depositado los cheques. Esta vez, el Tribunal de Primera Instancia ordenó la supresión de dichos documentos por entender que la falta de notificación a los afectados de tal requerimiento,

violentó la doctrina esbozada en <u>RDT Construction Corp. v. Contralor I</u>, *supra*. Esta doctrina le exige a toda entidad gubernamental que, al amparo de su facultad de emitir *subpoena duces tecum* le requiera a una persona información en su posesión sobre la cual un tercero tiene una expectativa razonable de intimidad, le notifique al afectado de dicho requerimiento, como garantía de la protección en contra de registros y allanamientos irrazonables consagrada en la Sección 10 del Art. II de nuestra Constitución. Oportunamente, el Procurador acudió al Tribunal de Circuito de Apelaciones quien confirmó la determinación del tribunal inferior, por entender que el requerimiento hecho a los bancos no había sido notificado conforme a derecho y, por tanto, procedía la supresión.

Inconforme, acude ante nos el Procurador General solicitando la revisión de la determinación del Tribunal de Circuito de Apelaciones. El Procurador alega que en las circunstancias particulares de este caso donde la investigación no iba dirigida en contra de los acusados, sino que iba dirigida a localizar el paradero de unos cheques emitidos por Hacienda, la doctrina esbozada por este tribunal en <u>RDT Construction Corp</u>, *supra,* no es de aplicación. Sostiene, además el Procurador, que los hechos en el caso de marras son claramente distinguibles de los hechos que produjeron la doctrina de <u>RDT Construction</u>, *supra*, pues en el caso de autos, a diferencia del mencionado caso, la investigación no iba dirigida a la cuenta bancaria de una

persona en particular. En este caso, la investigación giraba en torno a unos documentos y no en torno a un individuo.

Por último, argumenta el Procurador que el criterio rector en el análisis de la situación en este caso debe ser el de la razonabilidad de la intervención gubernamental a la luz de la totalidad de las circunstancias.

Por su parte, la defensa argumenta que el requerimiento realizado por Hacienda sin previa notificación a los acusados era una violación a la doctrina esbozada en RDT Construction, *supra,* en contravención con la cláusula que protege contra registros y allanamientos irrazonables de nuestra Constitución, por lo que, por mandato constitucional tenía que ser suprimida. Sostiene además que Hacienda tenía en su poder suficiente documentación [1], antes de obtener la información provista por los bancos, para identificar a los acusados y notificarles del requerimiento o, al menos, proceder ante un magistrado y obtener una orden judicial y así no violentar el derecho a la intimidad de los acusados protegido por la cláusula en contra de registros y allanamientos irrazonables recogida en el Art. II Sección 10 de la Constitución del E.L.A. y su contra parte federal, la Cuarta Enmienda de la Constitución Federal.[2]

---

[1] Hacienda estaba en posesión de una cantidad de cheques cancelados los cuales de su endoso al dorso surge el nombre de Linda V. Suazo Vázquez y un número de codificación bancaria.

[2] Este fue el razonamiento del Tribunal de Circuito de Apelaciones en la Opinión emitida el 30 de abril de 2002 por el panel compuesto por su presidente, Juez Gierbolini, el Juez Cordero y el Juez Rodríguez Muñiz.

Luego de expedir el auto solicitado y examinar las comparecencias de las partes, resolvemos.

II

El derecho a la intimidad del individuo está protegido por varias disposiciones de nuestra Constitución. Entre ellas se encuentra el Art. II sec. 10[3] el cual protege al individuo en contra de intervenciones irrazonables, por parte del Estado, con su persona o sus pertenencias.

Esta disposición constitucional provee a las personas una protección en contra de los ataques abusivos, registros, incautaciones y allanamientos irrazonables. El propósito de la misma, es la protección del derecho a la intimidad y dignidad del individuo frente a actuaciones arbitrarias e irrazonables del Estado. Pueblo v. Yip Berríos, 142 D.P.R. 386 (1997); Pueblo v. Santiago Alicea, supra; Pueblo v. Ramos Santos, 132 D.P.R. 363. Énfasis nuestro.

Es menester recordar que esta protección no opera automáticamente por el mero hecho de que ocurra una intervención estatal con un individuo. Sabido es que la garantía constitucional protege fundamentalmente a la persona y no a los lugares y, para que la misma se active, es necesario determinar si existe un interés personal del individuo sobre el lugar u objeto allanado, incautado o registrado de modo que exista una expectativa razonable de intimidad. Es esta expectativa razonable de intimidad la que es protegida por la disposición

_____

[3] 1 L.P.R.A. Art. II, sec. 10.

constitucional. En otras palabras, para que se entienda que hay la protección constitucional, la intervención por parte del Estado tiene que ser con el individuo y afectar una expectativa legítima de intimidad de éste. Por esto, si estamos ante la intervención del Estado con el individuo hay que determinar si la persona, en efecto, tiene el derecho de abrigar la expectativa de que su intimidad sea respetada para que entonces sea acreedor de la protección constitucional. ELA v. Puerto Rico Telephone Co., 114 D.P.R. 394, 402 (1983); Pueblo v. Lebrón, 108 D.P.R. 324, 331 (1979).  En resumen, un ciudadano puede invocar la protección constitucional cuando, con relación a la acción por parte de los funcionarios del Estado, sufrió una violación a su expectativa razonable a la intimidad. E.L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Ed. Forum, Vol.I, Colombia, pág 345 (1991).  La consecuencia de una violación a esta protección constitucional es la supresión de toda evidencia producto de una intervención irrazonable por parte del Estado con el derecho a la intimidad del individuo.

Nuestra Constitución exige que toda intervención por parte del Estado con el derecho a la intimidad del individuo sea autorizada por un magistrado mediante la expedición de una orden judicial basada en causa probable. Art II sec. 10, supra. Es un principio firmemente establecido que cualquier registro, allanamiento o incautación realizado sin previa orden judicial se presume irrazonable y, por ende, inválido. Esto no significa que automáticamente la evidencia obtenida en dicha intervención

es inadmisible. La falta de orden judicial simplemente activa una presunción de irrazonabilidad de la intervención. La misma tiene el efecto de cambiar el peso de la prueba al Ministerio Público quien entonces tiene que rebatir la presunción demostrando que la actuación gubernamental fue razonable, a la luz de las circunstancias particulares del caso justificando de esa forma de que se  prescinda de la orden judicial. Pueblo v. Santiago Alicea, supra,; Pueblo v. Narváez Cruz, 121 D.P.R. 429 (1988) Pueblo v. Malavé González, 120 D.P.R. 470 (1988).

Por otro lado, esta Curia ha resuelto que en aquellos casos en que instituciones gubernamentales tengan el poder para compeler a personas a suministrar información sobre la cual terceros puedan abrigar un derecho a la intimidad tienen, necesariamente, que notificar al agraviado o, en la alternativa, exigir los documentos a través de una orden judicial. RDT Construction Corp. I, *supra;* RDT Construction Corp v. Contralor II, 141 D.P.R. 861 (1996). Tanto la notificación como la orden judicial garantizan que en algún momento habrá la intervención por parte de un magistrado que vele por la razonabilidad de la intromisión gubernamental con el derecho a la intimidad de las personas.

A la luz de la normativa expuesta pasemos a discutir la situación que tenemos ante nos.

III

La controversia en el caso de autos estriba en la determinación de si la actuación de Hacienda al requerir, sin notificación, una información relacionada a unas cuentas de

personas indeterminadas, donde se habían depositado fondos públicos obtenidos ilegalmente, está en conflicto con la doctrina esbozada en RDT Construction, *supra* y la protección constitucional en contra de registros y allanamientos irrazonables contenida en el Art. II sec. 10 de nuestra Constitución.

En el caso de autos, la controversia gira en torno a la validez de un "requerimiento legal" en el que se pedía una información referente a unas cuentas bancarias. En el mismo, Hacienda exigía el número de cuenta donde los cheques, emitidos por ésta, habían sido depositados, hojas de depósito relacionadas a esas cuentas, solicitudes de aperturas de cuentas bancarias, tarjetas de firmas e identificación de las personas e información sobre las transacciones bancarias relacionadas a esas cuentas personales. Este requerimiento no fue notificado a los agraviados.

Al determinar si esta notificación era necesaria para cumplir con la cláusula constitucional que protege en contra de registros, incautaciones o allanamientos irrazonables y cumplir con la doctrina esbozada en RDT Construction, supra, debemos identificar si la actuación gubernamental atenta en contra del derecho a la intimidad de un individuo.

En primer lugar, debemos llamar la atención a que en el caso de marras, la entidad gubernamental conducía una investigación cuyo objetivo era conocer el paradero de unos cheques de su propio peculio, en este caso, el paradero de fondos públicos. La información requerida no se refería a las

cuentas de individuos particulares sino que se refería a las cuentas en donde los cheques emitidos por Hacienda habían sido depositados. Debido a su investigación, Hacienda tenía razones para creer que el destino de estos fondos no había sido uno legítimo. Por el contrario, se desprendía de la misma, que la emisión de los cheques había sido producto de un esquema fraudulento del cual Hacienda había sido víctima. En vista del derecho que tiene toda persona a conocer el paradero de sus cheques cuando éstos no son cobrados por sus debidos destinatarios, Hacienda solicitó información sobre donde se habían depositado sus cheques. El objetivo del requerimiento era conocer la cuenta en donde habían sido depositados los cheques, y no el de indagar sobre las transacciones bancarias hechas por los acusados, cosa que, para ellos, todavía no era viable ya que desconocían la identidad de éstos.

En segundo lugar, no era factible que al hacer el requerimiento a las instituciones financieras, Hacienda notificara a los acusados. En ese momento, los acusados no eran el foco de la investigación, Hacienda ni siquiera tenía conocimiento de la identidad de los mismos. De hecho, no es hasta que Hacienda recibe la información sometida por las instituciones financieras que adviene en conocimiento de la identidad de éstos. El requerimiento se refería al paradero de unos cheques emitidos por Hacienda. En vista de que la investigación no estaba dirigida en contra de los acusados, la protección constitucional no les ampara ya que el propósito de

la misma es proteger el derecho a la intimidad de los individuos, si la investigación no es en contra de personas no hay derecho a la intimidad que proteger.

La doctrina esbozada por este Tribunal en RDT Construction, supra, exige la notificación de todo requerimiento hecho por parte del gobierno a una persona sobre documentos donde un tercero abrigue una expectativa razonable de intimidad. Esta doctrina no es de aplicación a esta situación. Los hechos en este caso son claramente distinguibles de aquellos que nos inspiraron a la creación de la norma constitucional. En aquella ocasión, se trataba de una investigación en contra de una persona en particular y un requerimiento sobre todo tipo de actividad de su cuenta bancaria. En el caso de marras, sin embargo, la investigación giraba en torno al paradero de unos documentos no en torno a un individuo, quién es el único acreedor del derecho a la intimidad.

Debido a que la investigación llevada a cabo por Hacienda tenía el objetivo de conocer el paradero de los cheques, para alcanzar este objetivo era suficiente con requerirle a las instituciones financieras el número de las cuentas en las cuales los mismos fueron depositados y los documentos de identificación de los dueños de esas cuentas bancarias. Sin embargo, Hacienda no se limitó a esto y requirió también todas aquellas transacciones relacionadas a las cuentas identificadas independientemente de que las mismas incluían información de transacciones personales efectuadas con fondos

recibidos de diversas fuentes. Una vez Hacienda gira su investigación en torno a las transacciones personales hechas por los dueños de esas cuentas, éstos pasan a ser el foco de la intervención estatal y tienen derecho a la protección constitucional en contra de registros y allanamientos irrazonables si se determina que éstos abrigan una expectativa razonable de intimidad sobre la información requerida por el Estado.

Sabido es que el derecho a la intimidad se extiende a toda aquella información suministrada por los individuos a las instituciones bancarias que revelen los patrones, estilos de vida, o situación económica de éstos. Esto incluye las transacciones bancarias de las personas. RDT Construction, *supra*. Una vez la investigación de Hacienda cambia su foco de atención a las actuaciones de los aquí acusados al exigir copia de sus transacciones bancarias personales, está interfiriendo con el derecho a la intimidad de los acusados. Debido a que la información solicitada vía el requerimiento legal a las instituciones financieras que se refería a las transacciones bancarias de los acusados está amparada por el derecho a la intimidad, la misma está protegida por la cláusula constitucional en contra de registros, allanamientos e incautaciones irrazonables. Esto quiere decir que al requerir esta información, para garantizar la razonabilidad de la intervención del Estado, éste tiene que procurar la intervención de un magistrado ya sea previo a la intervención, mediante el diligenciamiento de una orden judicial, o mediante

la notificación a los intervenidos. Aunque la simple ausencia de la orden judicial no hace la evidencia obtenida inadmisible per se sino que levanta la presunción de irrazonabilidad, el Ministerio Público no nos ha dado razones que justifiquen el que se prescinda del requisito constitucional. Una vez el centro de la investigación deja de ser la búsqueda del paradero de los cheques de Hacienda y pasa a ser las transacciones bancarias de los acusados, en las cuentas personales que tenían antes del depósito de los cheques en controversia, la cláusula en contra de registros y allanamientos irrazonables de la Constitución les protege. El Estado debió concluir su investigación en torno al depósito de los cheques con la información referente a las cuentas bancarias en donde éstos fueron depositados, con la obtención de los números de cuenta y la identificación de sus dueños. Una vez obtuvieran esta información, procedía entonces notificar a los acusados sobre el requerimiento en relación a la información con las transacciones bancarias en sus cuentas personales.

Por las razones que anteceden revocamos el dictamen del Tribunal de Circuito de Apelaciones en cuanto a la supresión del número de cuenta, tarjeta de firmas y solicitud de apertura de cuenta bancaria, y confirmamos en cuanto a la supresión de la información referente a las transacciones bancarias. Devolvemos el caso para que se continúe con los procedimientos de forma consistente con lo aquí resuelto.

Se dictará la Sentencia correspondiente.

Federico Hernández Denton
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

   Demandante Peticionario

   v.

José N. Loubriel Serrano,          CC-2002-442
Certiorari
Linda Suazo Vázquez

   Demandado Recurrido

SENTENCIA

San Juan, Puerto Rico, a 16 de enero de 2003.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca el dictamen del Tribunal de Circuito de Apelaciones en cuanto a la supresión del número de cuenta, tarjeta de firmas y solicitud de apertura de cuenta bancaria, y se confirma en cuanto a la supresión de la información referente a las transacciones bancarias. Se devuelve el caso para que se continúe con los procedimientos de forma consistente con lo aquí resuelto.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez concurre sin opinión escrita.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo