EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Antulio Nieves Hernández<br><br>Peticionario | Certiorari<br><br>2008 TSPR 162<br><br>175 DPR \_\_\_\_ |

Número del Caso: CC-2007-952


Fecha: 30 de septiembre de 2008


Tribunal de Apelaciones:

        Región Judicial de Mayagüez-Aguadilla Panel IX

Juez Ponente:

        Hon. Carlos Soler Aquino


Abogados de la Parte Peticionaria:

        Lcdo. Ivandeluis Miranda


Oficina del Procurador General:

        Lcdo. Ricardo E. alegría Pons
        Procurador General Auxiliar



Materia: Supresión de Evidencia.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Recurrido

       v.                 CC-2007-952      Certiorari

Antulio Nieves Hernández

     Peticionario


SENTENCIA


San Juan, Puerto Rico, a 30 de septiembre de 2008.

En esta ocasión, nos corresponde determinar si erró el Tribunal de Apelaciones al revocar una resolución del Tribunal de Primera Instancia declarando Con Lugar una solicitud de supresión de evidencia presentada por el peticionario. Por entender que el Tribunal de Primera Instancia erró manifiestamente al invertir el peso de la prueba para suprimir la evidencia objeto de un registro realizado bajo el palio de una orden judicial, confirmamos el dictamen recurrido.

**I**

Un confidente que había prestado información confiable a la Policía de Puerto Rico en el pasado

alertó al Agte. Charlie Pérez Feliciano que el Sr. Antulio Nieves Hernández se dedica a comprar propiedad hurtada y que recientemente había comprado ilegalmente varias armas de fuego con el propósito de venderlas en el mercado de contrabando. Para corroborar dicha información, el agente Pérez Feliciano procedió con el informante a localizar la residencia del señor Nieves Hernández en un vehículo oficial no rotulado. Allí identificaron al señor Nieves Hernández en las afueras de su residencia.

Alegadamente, el confidente se bajó del vehículo y simuló la intención de comprar un arma de fuego. En aras de realizar una transacción, el señor Nieves Hernández entró a su residencia y regresó a los dos minutos portando un revólver color "cromado" con cachas de madera. Luego de que el señor Nieves Hernández le demostrara y entregara dicha arma de fuego, el confidente se la devolvió a éste y regresó al vehículo donde esperaba el agente Pérez Feliciano.

Con el propósito de obtener una orden de registro, el agente Pérez Feliciano hizo una declaración jurada describiendo detalladamente los sucesos antes mencionados, así como la localización de la residencia en donde acontecieron los mismos. Examinada la declaración jurada, el Tribunal de Primera Instancia emitió una orden de registro y allanamiento en contra de la residencia del señor Hernández Nieves.

Al diligenciarse la mencionada orden, el señor Nieves Hernández voluntariamente aceptó poseer armas de fuego y

dirigió a los agentes del orden público a localizar algunas de sus armas. Así las cosas, los oficiales de la Policía ocuparon varias armas de fuego en distintos lugares de la residencia.

Como resultado de ese allanamiento, el Ministerio Público radicó ocho denuncias en contra del señor Nieves Hernández por violación a los Artículos 5.06, 5.07, 5.10 y 6.01 de la Ley de Armas, 25 L.P.R.A. secs. 458, 459. Posteriormente, el Tribunal de Primera Instancia determinó causa probable para acusar al señor Nieves Hernández por la comisión de estos delitos. Luego de los incidentes procesales de rigor, el señor Nieves Hernández solicitó la supresión de la evidencia que le fue incautada mediante el mecanismo provisto por la Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 234.

Celebrada la vista evidenciaria, el Tribunal de Primera Instancia suprimió la prueba incautada y archivó las acusaciones en contra del señor Nieves Hernández. El foro de instancia concluyó que cuando un acusado alega en una moción de supresión de evidencia que el testimonio prestado por el agente que hizo las vigilancias que motivó la expedición de la orden de registro es uno estereotipado, le corresponde al Ministerio Público el peso de la prueba para demostrar lo contrario. A pesar de que el agente Pérez Feliciano reprodujo la misma narración de los hechos que expuso en la declaración jurada antes mencionada, el tribunal de instancia no le dio credibilidad al testimonio prestado por éste en dicha vista evidenciaria.

Por no estar de acuerdo con dicho dictamen, el Ministerio Público acudió al Tribunal de Apelaciones mediante un recurso de *Certiorari.* Dicho foro apelativo expidió el auto y revocó al Tribunal de Primera Instancia. En síntesis, determinó que el agente Pérez Feliciano proveyó una descripción detallada de la actividad ilegal que presenció.

Examinado el recurso, acordamos expedir el auto. Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

Sabido es que el Artículo II, Sección 10 de la Constitución del Estado Libre Asociado de Puerto Rico establece que sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo el lugar a registrarse y las personas a detenerse. Además, dicho precepto constitucional dispone que evidencia obtenida en violación de esta sección es inadmisible en los tribunales. Art. II, Sec. 10, Const. ELA., L.P.R.A. 1.

Ello exige que la determinación judicial de causa probable se apoye en una declaración jurada o afirmación que se sustente bajo premisas verdaderas y razonables. Asimismo, la determinación de causa probable necesaria para expedir una orden de registro o allanamiento descansa en la probabilidad de que exista determinado objeto ilegal incautable y que ese objeto se encuentre en el lugar a ser

registrado o allanado. Pueblo v. Camilo Meléndez, 148 D.P.R. 539, 555 (1999).

Ahora bien, hemos expresado reiteradamente que al determinar si existe o no causa probable para expedir una orden de allanamiento no estamos llamados a establecer si la ofensa que se imputa fue verdaderamente cometida. En esencia, sólo nos corresponde determinar si el deponente tuvo base razonable, al momento de prestar su declaración jurada y haberse librado la orden de registro, para creer que se estaba violando la ley en el lugar a ser allanado. Pueblo v. Ortiz Alvarado, 135 D.P.R. 41, 47 (1994); Pueblo v. Tribunal Superior, 91 D.P.R. 19, 25 (1964). De igual forma, al pasar juicio sobre la causa probable que justifica la expedición de una orden, debemos dilucidar si los hechos aparentes que se desprenden de la declaración jurada son de tal naturaleza que una persona prudente y razonable pudiera creer que se ha cometido la ofensa imputada. Pueblo v. Valenzuela Morel, 158 D.P.R. 526, 543 (2003); Pueblo v. Santiago Avilés, 147 D.P.R. 160, 167 (1998).

Por otro lado, la Regla 234 de Procedimiento Criminal, *supra*, provee un mecanismo procesal excepcional para suprimir evidencia obtenida en contravención con lo antes expuesto. Dicha regla constituye un mecanismo para hacer efectiva la protección constitucional contra registros o allanamientos ilegales o irrazonables. Pueblo v. Blasé Vázquez, 148 D.P.R. 618 (1999). Véase además, O. Resumil, Práctica Jurídica de Puerto Rico, Derecho Procesal Penal,

Equity, 1990, pág. 276. Sin embargo, una vista de supresión de evidencia no equivale a un juicio en su fondo, pues no se dilucida en ésta la culpabilidad o inocencia del acusado. Dicha vista se debe circunscribir a considerar si el registro efectuado fue o no razonable. Pueblo v. Rivera Rivera, 117 D.P.R. 283 (1986).

En vista de ello, debemos distinguir entre un registro y allanamiento realizado bajo el palio de un mandamiento judicial y el que se efectúa sin dicha orden previa. Es un principio firmemente establecido en nuestro ordenamiento constitucional que cualquier registro, allanamiento o incautación realizado sin previa orden judicial se presume irrazonable y, por ende, inválido. Por consiguiente, en ausencia de orden judicial le corresponde al Estado probar la razonabilidad y validez del registro y allanamiento. Pueblo v. Loubriel Suazo, 158 D.P.R. 371, 380 (2003).

Por otro lado, cuando el registro se efectúa al amparo de una orden judicial impera una presunción de legitimidad, pues toda determinación judicial se acompaña de una presunción de corrección. En esos casos, el acusado tiene el peso de la prueba para rebatir la legalidad y razonabilidad de la actuación gubernamental.

A su vez, y como bien señala el profesor Ernesto Chiesa,

> el juez que adjudica una moción de supresión de evidencia incautada mediante previa orden judicial, impugnada por alegada ausencia de causa probable […] debe guardar cierta deferencia a la inicial determinación de causa probable que hizo el magistrado que expidió la orden[…] Nos parece que una vez obtenida la

orden, la mejor norma es que la ulterior revisión judicial de tal determinación se guíe bajo el principio general de que **la función judicial revisora será determinar si había base suficiente para que un magistrado determinara causa probable; debe rechazarse la norma de que se haga una determinación** *de novo* **de causa probable**. (Énfasis nuestro). E.L. Chiesa Aponte, Derecho <u>Procesal Penal de Puerto Rico y Estados Unidos</u>, Vol. I, Editorial Forum, 1992, pág. 370.

Ante tales supuestos, hemos expresado que la declaración jurada que sirvió de base para la expedición de la orden de allanamiento es suficiente cuando el testimonio del agente que intervino en la investigación describe detalladamente el lugar a registrarse y las personas a detenerse. Para impugnar la razonabilidad de un registro realizado al amparo de una determinación judicial, el acusado debe probar que el testimonio que dio lugar al mandamiento fue vago o estereotipado, porque "se reduce a establecer los elementos mínimos necesarios para sostener un delito sin incluir detalles imprescindibles para reforzarlos". <u>Pueblo v. Rivera Rodríguez</u>, 123 D.P.R. 443, 480 (1989); <u>Pueblo v. González del Valle</u>, 102 D.P.R. 374, 376 (1974).

Con este marco normativo en mente, procedemos a resolver la controversia ante nos.

### III

En el presente caso, el Tribunal de Primera Instancia atendió la solicitud de supresión de evidencia como si se tratara de un registro sin orden judicial y le correspondiera al Estado rebatir la presunción de ilegalidad del mismo. Ello, a pesar de que el registro y

allanamiento de la residencia del señor Nieves Hernández se realizó al amparo de un mandamiento judicial para tales propósitos.

Aparentemente, este error manifiesto del foro de instancia fue motivado por la sugerencia del señor Hernández Nieves, sin prueba o argumentación alguna al respecto, de que el testimonio del agente Pérez Feliciano fue estereotipado. Tal premisa equivocada es evidente, dado que en la vista de supresión de evidencia el juez de instancia concluyó que "[e]l Ministerio Público tiene que rebatir esa presunción con prueba que establezca que el testimonio es uno creíble, yendo más allá de los datos indispensables para probar los requisitos mínimos de un delito […]". Dicho razonamiento es errado, pues este caso no versa sobre un registro y allanamiento sin orden donde la imputación de testimonio estereotipado generaría una obligación del Ministerio Público de probar lo contrario, sino de una intervención gubernamental autorizada por un funcionario judicial neutral que determinó que la declaración jurada del agente Pérez Feliciano resultaba suficiente para expedir dicho mandamiento.

Por otro lado, surge del expediente que tanto la declaración jurada como el testimonio del agente Pérez Feliciano proveyeron una descripción sumamente detallada y particularizada de la actividad ilegal que presenció. A pesar de que el agente no corroboró si el señor Nieves Hernández poseía una licencia para poseer armas de fuego, dicho dato era impertinente ante la realidad fáctica de que

no poseía la misma y que el confidente que colaboró con la investigación simuló una transacción voluntaria con el acusado sin que se cumplieran con ninguna de las formalidades estrictas que impone la Ley para la compraventa en el mercado de armas de fuego.

Por consiguiente, el señor Nieves Hernández no ha demostrado mediante preponderancia de la prueba la ilegalidad imputada para rebatir la causa probable que dio lugar al mandamiento judicial autorizando el registro y allanamiento. Evidentemente, el Tribunal de Apelaciones actuó correctamente al revocar la resolución del foro de instancia, pues éste cometió un error manifiesto al suprimir la evidencia y ordenar el archivo de los cargos presentados contra el señor Nieves Hernández.

## IV

Por los fundamentos antes expuestos, se expide el auto solicitado, se confirma la sentencia dictada por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de acuerdo a lo aquí dispuesto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Fiol Matta disiente con opinión escrita.


                              Aida Ileana Oquendo Graulau
                               Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico
        Recurrido

            v.

                                    CC-2007-952
                                            *Certiorari*

Antulio Nieves Hernández
        Peticionario

Opinión Disidente emitida por la Jueza Asociada SEÑORA FIOL MATTA

En San Juan, Puerto Rico, a 30 de septiembre de 2008.

Disiento de la Sentencia de este Tribunal, porque entiendo que en este caso no concurren las circunstancias que justifican que los foros apelativos sustituyan con su criterio el del foro de primera instancia. Reinstalaría la determinación del tribunal de instancia que ordena la supresión del testimonio del agente Pérez Feliciano y devolvería para que se continuaran los procedimientos. Tal conclusión se fundamenta en el derecho y en los siguientes hechos que la mayoría del Tribunal ignora en su sentencia. Contra el Sr. Antulio Nieves Hernández, en adelante el peticionario, se diligenció una orden de registro y allanamiento. Como fruto de ese

registro, se incautó material ilegal consistente en armas de fuego y se presentaron acusaciones por infracción al artículo 5.06, 5.07, 5.10 y 6.01 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 458 (e)(f)(i) y 459. El peticionario instó oportunamente una Moción de supresión de evidencia al amparo de la Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 234, solicitando que se excluyera el testimonio que dio base a la expedición de la orden de allanamiento. De acuerdo al foro de primera instancia, el peticionario arguyó en su moción que la orden de registro y allanamiento era insuficiente y obtenida de forma contraria a derecho; que por ser una orden *ultra vires*, se trata de un registro sin orden y que el testimonio que suscitó la orden de allanamiento era vago, contradictorio y en fin, estereotipado. El Tribunal de Primera Instancia celebró una vista evidenciaria para dirimir la solicitud del peticionario.

A continuación, reproducimos lo acaecido en la vista evidenciaria de acuerdo a la Resolución del Tribunal de Primera Instancia.

Durante la vista evidenciaria, el peticionario reiteró los planteamientos esbozados en su Moción. Adujo que el agente Charlie Pérez Feliciano prestó vigilancia basado en una información dada por un confidente, sin tener conocimiento personal de la alegada confidencia y que de la propia observación del agente Pérez Feliciano no se percibe un acto ilegal o una transacción de arma de fuego.

Por su parte, el Ministerio Público alegó que la declaración prestada por el agente Pérez Feliciano fue suficiente en derecho para expedir una orden de registro y allanamiento y que su testimonio no fue estereotipado.

El agente Pérez Feliciano testificó en la vista evidenciaria que para el 5 de agosto de 2006 estaba investigando una confidencia con relación a un señor que se dedica a la compra y venta de armas de fuego. Entrevistó a un confidente que anteriormente había ofrecido información conducente al arresto y convicción de varias personas en el área de Aguadilla. El agente testificó que el confidente describió y nombró al peticionario como alguien que se dedica a la compra de propiedad hurtada, que recientemente había comprado armas de fuego y que las tenía para la venta. El confidente le describió la residencia del peticionario y brindó la dirección física de la misma. El agente Pérez Feliciano indicó que tras comunicarse con su supervisor sobre estos particulares, recibió instrucciones para que investigara la confidencia. El agente Pérez Feliciano relató que fue con el informante a localizar la residencia del peticionario y que al llegar al lugar, el confidente lo señaló. Posteriormente, el agente testificó que planificó con el informante llevar a cabo una simulación de compra de un arma de fuego. Dijo que el día pautado, se personaron ambos a la residencia del peticionario en un automóvil confidencial; que el confidente llamó al peticionario, quien salió de su casa y

dialogó con el confidente antes de entrar a la casa del peticionario. Relata el agente que al cabo de varios minutos, el informante salió con un revolver "cromeado" y cachas en madera en la mano derecha. El agente testificó que tras tenerlo en sus manos, el informante procedió a devolverle el revólver al peticionario, dialogaron un rato y se despidieron. El peticionario regresó al interior de su residencia y el confidente al vehículo confidencial. El agente indicó que le informó lo sucedido a su supervisor y que éste le dio instrucciones de hacer una declaración jurada y consultar con el Fiscal para obtener una orden de registro y allanamiento.

A preguntas de la defensa, el agente Pérez Feliciano declaró que su plan era simular una compra de arma de fuego; que no verificó si el peticionario poseía arma de fuego; que a su entender el arma era real y no de juguete y que no se consumó la compra porque no había dinero. Sobre el confidente, el agente declaró que no se le dio dinero porque no confiaba en él pues tenía problemas de drogas y que no conocía su nombre, sólo su apodo, a pesar de ser un confidente participante. Finalmente, adujo el agente que no llevó a cabo más vigilancias porque a su entender, el hecho de darle el arma al confidente era un delito.

El Tribunal de Primera Instancia concluyó que los hechos del caso, según plasmados en la declaración jurada del agente Pérez Feliciano, así como relatados en su testimonio en corte, "establecen unos datos que nos llevan

a concluir que la información alegada por el agente investigador, que dio motivos a la expedición de la orden de registro y allanamiento no ocurrieron como se plantean". El foro primario determinó que una confidencia de la naturaleza de la del caso de autos, que relaciona a un individuo con la compra y venta de armas, debió haber sido investigada más minuciosamente. El tribunal entendió que la declaración ofrecida por el agente Pérez Feliciano contenía "muy pocos detalles sobre la investigación, el confidente y el acto delictivo a plena vista". El tribunal también opinó que el mejor curso a seguir hubiera sido llevar a cabo una compra del arma para así tener prueba del acto delictivo al ocuparse el arma. El hecho de que no se le pidió una licencia de portación de armas le resultó al tribunal un hecho "incomprensible", así como la contradicción que implica iniciar una investigación a base de una confidencia brindada por una persona a quien no se le puede confiar dinero y de quien no conocía su nombre a pesar de ser confidente participante. El tribunal también concluyó que el agente Pérez Feliciano basó su declaración jurada en una "vigilancia flaca y descarnada y en la referencia alegada por el confidente que sorprendentemente no incluyó en la declaración jurada" como tampoco incluyó lo que le relató el confidente después de la venta simulada. Por último, el tribunal expresó que no le daba credibilidad al testimonio prestado por el agente Pérez Feliciano, pues éste "va más allá de ser uno estereotipado

a ser uno **increíble y absurdo"** (Énfasis en el texto original.) Por estas razones, el Tribunal de Primera Instancia ordenó la supresión de toda la evidencia ocupada en el allanamiento ejecutado en virtud de la orden que se basó en el testimonio del agente Pérez Feliciano.

El Ministerio Público recurrió de esta determinación del Tribunal de Primera Instancia.

El Tribunal de Apelaciones revocó al foro de primera instancia y basó su decisión en el contenido de la declaración jurada prestada por el agente Pérez Feliciano. El foro apelativo entendió que de la declaración jurada surge una descripción detallada de la actividad ilegal que presenció el agente. Del mismo documento adujo el Tribunal de Apelaciones que el agente Pérez Feliciano no incurrió en contradicciones, inconsistencias, lagunas ni vaguedades, en fin, que la declaración fue sumamente específica y detallada. Por estas razones entendió el tribunal apelativo que de acuerdo a la declaración jurada, se configuró la causa probable necesaria para la emisión de una orden de registro y allanamiento, por lo que procedía la revocación de la Resolución del Tribunal de Primera Instancia y la continuación de los procedimientos.

Traído el caso ante nuestra consideración por el peticionario, paralizamos los procedimientos en auxilio de nuestra jurisdicción y expedimos el *certiorari* solicitado. Una vez elevados los autos, nos percatamos de que el Tribunal de Apelaciones no contó con una trascripción ni

con una minuta que refleje lo sucedido en la vista evidenciaria.[1] Su decisión estuvo basada en la declaración jurada del agente Pérez Feliciano, declaración que le pareció insuficiente al Tribunal de Primera Instancia y cuyo autor no mereció credibilidad luego de haber prestado su testimonio en corte.

No se puede perder de perspectiva que el Tribunal de Primera Instancia tiene la oportunidad de evaluar el testimonio de un testigo ocular y particularmente…

> …el criterio cualitativo testimonial, a saber, la habilidad del deponente para percibir el acontecimiento, aptitud para conservarlo en su memoria, capacidad para evocarlo, modo de querer expresarlo, y cómo puede hacerlo, es esencial… Ingredientes adicionales tales como el grado de inteligencia del testigo, su facilidad o dificultad para verbalizar y explicar, el nerviosismo natural que genera la sala de un tribunal, las expectativas de una confrontación de lo atestado con el contrainterrogatorio, el interés en el desenlace final del caso y un sin número de imponderables, imponen sobre los tribunales de instancia la más delicada función del quehacer judicial humano: el descubrir la verdad haciendo el mayor esfuerzo en dirimir prueba conflictiva y en muchas ocasiones incompleta… Este proceso mental y realidad forense ––que corresponde más bien a la disciplina de la psicología del testimonio–– nunca puede ser ignorado por un tribunal. Su comprensión y aplicabilidad será en última instancia el elemento que inclinará de uno u otro lado la balanza de la justicia. (Citas omitidas.) Pueblo v. Morales Rivera, 112 D.P.R. 463, 464 (1982).

---

[1] La Regla 29 del Reglamento del Tribunal de Apelaciones establece que será la parte peticionaria o apelante quien estime si es necesario que el Tribunal de Apelaciones considere alguna porción de la prueba oral. Si la parte determina que es necesario que el tribunal considere prueba oral, someterá una transcripción, exposición estipulada o exposición narrativa.

Bajo este fundamento reiteradamente hemos resuelto que no intervendremos en la apreciación de la prueba oral que haga el foro de primera instancia en ausencia de error manifiesto, prejuicio o parcialidad o si la prueba no se distancia de la realidad fáctica o ésta no sea inherentemente imposible o increíble.[2] En <u>Hernández v. San Lorenzo Construction</u>, 153 D.P.R. 405, 425 (2001) expresamos que:

> Dado que es norma reiterada por este Tribunal que las determinaciones de hecho que hace el Tribunal de Primera Instancia merecen gran deferencia y respeto por la oportunidad que tuvo el juzgador de los hechos de observar y escuchar a los testigos, la intervención del foro apelativo con esa prueba tiene que estar basada en un análisis independiente de la prueba desfilada y no a base de los hechos que exponen las partes.

También hemos dicho que no podemos sustituir la apreciación de la prueba del juez sentenciador ni sus determinaciones tajantes y ponderadas con sólo un examen de un "expediente frío e inexpresivo". <u>Pueblo v. Rivera Robles</u>, supra, págs. 869-871; <u>Rolón v. Charlie Car Rental, Inc.</u> 148 D.P.R, 420,433 (1999); <u>López Vicil v. I.T.T.</u>

---

[2] "Esto es particularmente cierto cuando no se hubiera elevado una exposición narrativa de la prueba oral. Lo cierto es que un foro apelativo no puede descartar las determinaciones de hecho del foro recurrido y sustituirlas por sus propias apreciaciones valiéndose meramente de un examen del expediente del caso." H. Sánchez Martínez, <u>Derecho procesal apelativo</u>, Lexis-Nexis, 2001, sec. 3702, pág. 611. Véanse <u>Benítez Guzman v. García Merced</u>, 126 D.P.R. 302, 208 (1990); <u>Rolón v. Charlie Car Rental</u>, Inc. 148 D.P.R, 420,433 y <u>Pueblo v. Calderón Hernández</u>, 145 D.P.R. 603, 605-606 (1998).

Intermedia, Inc., 142 D.P.R. 857 (1997); Benítez Guzmán v. García Merced, 126 D.P.R. 302, 208 (1990).

En este caso, el Tribunal de Primera Instancia tuvo la oportunidad de evaluar el "criterio cualitativo testimonial" del agente Pérez Feliciano y fue bastante enfático en sus conclusiones sobre el mismo. El juzgador de instancia entendió probado que el testimonio del agente, sobre el cual se fundamentó la orden de registro, fue vago y estereotipado y, por consiguiente, el mandamiento fue insuficiente. En consecuencia, se justificaba que el peso de la prueba sobre la razonabilidad del registro quedara del lado del Ministerio Público. Por tanto, no fue un error manifiesto del tribunal inferior entenderlo así, según declara la Sentencia mayoritaria.

Por otro lado, resulta preocupante que se afirme mediante Sentencia de este Tribunal que "a pesar de que el agente no corroboró si el señor Nieves Hernández poseía una licencia para poseer armas de fuego, dicho dato era impertinente ante la realidad fáctica de que no poseía la misma." La sección 10 del artículo II de la Carta de Derechos de nuestra Constitución reconoce como un derecho del pueblo "la protección de sus personas, casas, papeles y efectos contra registros y allanamientos irrazonables." Añade, que la evidencia obtenida en violación a dicho principio será inadmisible en los tribunales. Esta regla de exclusión de rango constitucional se basa totalmente en consideraciones de política pública, con el propósito,

entre otros, de disuadir o desalentar a los funcionarios del orden público de violentar la protección constitucional. E.L. Chiesa Aponte, <u>Derecho Procesal Penal de Puerto Rico y Estados Unidos</u>, Colombia, Ed. Forum, 1991, Vol. I, pág. 284. Dicha norma no esta predicada en un fundamento de la búsqueda de la verdad, por lo cual no es pertinente que la evidencia encontrada tenga o no valor probatorio.

En vista de lo anterior, la Constitución de Puerto Rico protege al pueblo de registros y allanamientos irrazonables independientemente de sus frutos, requiriendo una justificación para intervenir con la intimidad de las personas. No puede justificarse un registro irrazonable con el resultado del mismo.

Liana Fiol Matta
Jueza Asociada