La Jueza Asociada Señora Fiol Matta
emitió la opinión del Tribunal.
Hoy resolvemos que el Estado no puede obtener los registros de llamadas telefónicas de un ciudadano sin antes notificarle de ello u obtener una orden judicial a esos efectos, aunque la persona cuyos registros se soliciten no sea objeto de la investigación gubernamental. En otras palabras, reconocemos que una persona tiene una expectativa razonable de intimidad sobre los registros de sus llamadas telefónicas, particularmente cuando esta información está en manos de un tercero. Por último, atendemos cómo esta normativa interactúa con una acción en daños y perjuicios presentada por la persona afectada por la intrusión gubernamental.
I
El 22 de octubre de 2003, el periodista Carlos Weber Carrillo se enteró de que, dos meses antes, el Negociado de Investigaciones Especiales del Departamento de Justicia (NIE) le había requerido a su compañía de teléfono una relación de todas las llamadas que él hizo y recibió desde su celular en febrero de 2003. La información se había en- *693 tregado sin que al señor Weber se le notificara y sin que mediara una orden judicial.
Al indagar sobre la intervención con su historial de lla-madas, el señor Weber supo que la investigación se debía a que, el 12 de febrero de 2003 y como parte de sus funciones como reportero, él había inquirido sobre un operativo del NIE que no se había anunciado a la prensa.(1) Esto provocó que el director del NIE encomendara al fiscal Francisco Viera Tirado que investigara si alguno de los agentes del NIE estaba filtrando información sin autorización.
El fiscal Viera emitió una orden subpoena duces tecum para que la compañía Cingular produjera las listas de las llamadas realizadas por los agentes del NIE que participa-ron del operativo desde sus teléfonos oficiales. Al exami-narlas, encontró que uno de los inspectores había hecho tres llamadas a un número telefónico ajeno a los de la agencia tres horas antes del operativo y mientras este se llevaba a cabo. Por ello, requirió a Cingular, mediante otra orden subpoena, que le proporcionara el nombre y la infor-mación personal del usuario de ese número de teléfono, así como una relación de todas las llamadas realizadas y reci-bidas por ese teléfono en el mes de febrero. Cingular produjo la información solicitada. El usuario del número resultó ser el señor Weber. Cuando el señor Weber preguntó en el NIE si era cierto que habían inspeccionado sus datos per-sonales, el fiscal Viera le indicó que sí, pero que no se pre-ocupara, pues la investigación no era en su contra, sino para detectar violaciones a las normas del NIE por parte de los agentes.(2)
*694 El señor Weber demandó al Estado por violación a sus derechos civiles, violación de su derecho a la intimidad y por daños y perjuicios. Alegó que, sin notificarle previamente ni contar con una orden judicial, el NIE requirió a Cingular el estado mensual de las llamadas de su celular, que incluye tanto las comunicaciones con todo tipo de ciu-dadanos para una obertura periodística como sus comuni-caciones personales.(3) El reportero expresó en su demanda que esa intervención, ilegal y negligente, se hizo con grave menosprecio a su seguridad, a su tranquilidad y a su ex-pectativa de intimidad, y que, luego de que supo sobre la situación, sus reclamos se trataron con total indifer-encia.(4) Señaló que indagar información suya sin su con-sentimiento y sin que él hubiera cometido infracción al-guna es inconstitucional y le causó angustias mentales, por lo que solicitó una indemnización de $650,000.(5)
Luego de diversos trámites procesales y de la celebra-ción del juicio, el Tribunal de Primera Instancia dictó Sen-tencia en la cual desestimó la reclamación del señor Weber.(6) Concluyó que al demandante no se le violó su derecho a la intimidad respecto a su celular, debido a que el señor Weber no tenía una expectativa de privacidad so-bre este, puesto que quien recibe la factura es su patrono y *695 el señor Weber siguió utilizando el mismo número telefó-nico después de enterarse de la orden subpoena. Sin embargo, el tribunal de instancia reconoció que en Puerto Rico no está decidido si un individuo tiene expectativa de intimidad sobre su registro de llamadas en posesión de su proveedor de telefonía. La Sentencia indicó también que la acción del fiscal Viera estaba amparada por ley, pues tenía el propósito de detectar qué agente violaba la disposición legal que impone una pena criminal por divulgar informa-ción del NIE sin autorización, y no conllevó indagar sobre el contenido de las llamadas. Asimismo, el foro de instancia determinó que no se logró probar que existiera un nexo causal entre algún daño real del señor Weber y las actua-ciones del NIE.
Inconforme con el resultado, el señor Weber solicitó la revisión ante el Tribunal de Apelaciones. El foro apelativo confirmó al de instancia.(7) Expuso que el Estado no utilizó la orden subpoena deliberadamente para no tener que cumplir con las normas de notificar a la persona cuyos do-cumentos se investigan y para obtener una orden judicial, y que llegó a la información del reportero mediante una cadena investigativa válida y razonable. Enfatizó en que la evidencia no se utilizaría contra el señor Weber en un pro-cedimiento administrativo o judicial. Además, le brindó deferencia al foro de instancia en cuanto a que no se presentó prueba certera sobre los daños que sufrió el demandante a causa de las acciones del Estado.
El señor Weber recurrió ante este Tribunal. Expedimos el recurso y recibimos los alegatos de ambas partes. El pe-ticionario señaló que el foro apelativo erró al determinar que la obtención de su información personal no constituyó un registro, que el criterio de razonabilidad era suficiente para validar el requerimiento de información y que la *696 agencia no tenía que cumplir con los controles de notifica-ción previa u orden judicial. Además, indicó que el tribunal erró al resolver que el peticionario no albergaba una expec-tativa de intimidad sobre su registro de llamadas y que no sufrió daños resarcibles. Argumentó que, tanto por el en-tendido social de protección a la privacidad de las comuni-caciones personales, como por la obligación legal que tie-nen las compañías de telefonía de salvaguardar la información de sus usuarios y los patrones de uso de sus equipos, los ciudadanos tienen una expectativa de intimi-dad razonable sobre información como la obtenida por el NIE sobre el historial del celular del señor Weber. (8) Aña-dió que no había razón para presumir que hubiera renun-ciado a sus derechos por el mero hecho de hacer lo que cualquier persona haría: utilizar los servicios de una com-pañía de telefonía que registra las llamadas para comuni-carse, beneficiarse del pago de su celular por su patrono y usar su teléfono móvil para ejercer su función como periodista. Asimismo, puntualizó que el requerimiento ni siquiera se centró en los registros pertinentes a la fecha del operativo, sino que se estudiaron sus llamadas de todo el mes. También discutió la prueba pericial sobre los daños que sufrió, la cual no se impugnó o rebatió.
Por su parte, el Estado alegó que el señor Weber no tenía una expectativa razonable de intimidad sobre sus re-gistros de llamadas que conllevara el deber del NIE de notificarle antes de solicitar la información a la compañía de telefonía u obtener una orden judicial para ello. Enfa-tizó en que el Tribunal Supremo de Estados Unidos decidió en 1979 que no existe tal expectativa pues, al marcar nú-meros de teléfono, los usuarios proveen voluntariamente esa información a la empresa que gestiona sus llamadas y consienten a que ésta sea conservada para propósitos de *697 facturación.(9) Advirtió que el requisito de notificación u orden judicial se ha exigido en casos como el de las plani-llas de contribución sobre ingresos y los estados de cuentas bancarias, en los que la información requerida tiene “con-tenido” —es decir, que revelan información íntima sobre la persona — , mientras que la lista de números a los que se ha llamado no divulga propiamente el contenido de las comunicaciones. También subrayó que el fiscal Viera soli-citó esta lista como parte de una investigación legítima. Indicó que, si hubo invasión a la intimidad del señor Weber, esta fue mínima y cede ante el interés del Estado de determinar si hubo una divulgación indebida de información confidencial del NIE.(10) Asimismo, el Estado señaló que el peticionario no probó adecuadamente sus angustias mentales y que el tribunal de instancia no estaba obligado a aceptar la declaración del perito psiquiatra. Por lo tanto, solicitó que se confirmara la Sentencia del Tribunal de Apelaciones, que avaló la desestimación de la demanda del foro de instancia.
I — 1 hH
El derecho a la intimidad goza de la más alta jerarquía en nuestro ordenamiento constitucional y aplica ex *698 proprio vigore. (11) La Constitución del Estado Libre Asociado de Puerto Rico protege a las personas contra ataques abusivos a su vida personal y prohíbe los registros, los allanamientos las incautaciones irrazonables sobre la persona, la casa, los papeles y los efectos de los ciudadanos y las ciudadanas.(12) Asimismo, la Constitución de Estados Unidos establece la prohibición contra registros y allanamientos irrazonables como una protección básica y mínima que deben garantizar los estados y territorios.(13) Por eso, en nuestro país existen diversas garantías para salvaguardar la información personal.
La intromisión del Estado en la vida privada de las personas, cuando es necesaria para llevar a cabo una investigación criminal, no está prohibida pero sí limitada, pues el interés gubernamental de poner en vigor las leyes penales y combatir el crimen no permite violar los derechos de los ciudadanos y las ciudadanas a su intimidad.(14) Una agencia puede emitir una orden subpoena para obtener documentos en manos de terceras personas y así adelantar una investigación administrativa o criminal, siempre que con ello no infrinja los derechos de las personas investigadas. De igual forma, puede requerir información perteneciente a terceros en quienes no se ha centrado la investigación, pero cuando dicho requerimiento se le hace a un tercero, impera la protección judicial ante la intervención gubernamental.
En el presente caso, la información está en manos de un *699 tercero, en el sentido de que no es a Cingular a quien se refieren los documentos solicitados. Además, la informa-ción le pertenece a un tercero, en el aspecto de que la in-vestigación sobre la posible comisión de un delito no estaba dirigida a acusar al señor Weber. Por ello, surge la necesi-dad imperante de proteger la intimidad del ciudadano o de la ciudadana de quien no se sospecha ante la posibilidad de que el tercero que posee información suya la divulgue a la agencia de gobierno que se la solicite.
A. En nuestro ordenamiento jurídico se le ha recono-cido al Estado amplia autoridad investigativa para atender y resolver los problemas que enfrenta nuestra sociedad y asegurar que la política pública vigente en diversas áreas de la vida social se implante adecuadamente.(15) Es decir, aunque es común que las agencias obtengan información de manera voluntaria, con frecuencia se les delega me-diante legislación el poder de obligar a las personas a que suministren la información que las agencias necesiten.
Entre los diversos poderes delegados a las agencias administrativas está el poder de citación, que se utiliza para obtener información durante una investigación. Estas citaciones “son instrumentos vitales para que las agencias puedan cumplir las funciones que se les encomiendan”.(16) El poder de requerir información de manera coercitiva incluye el poder de citar testigos y el de requerir la producción de documentos.(17) En particular, muchas agencias tienen facultad para utilizar dos instrumentos investigativos fundamentales. El primero es el subpoena ad testificandum, mediante el cual se requiere el testimonio de alguna persona; el segundo es el subpoena duces tecum, que ordena a la persona a que comparezca ante la agencia para producir documentos. Sin estas herra- *700 mientas, el poder de investigación administrativo quedaría restringido a la información obtenida con el consentimiento del investigado.(18)
Ahora bien, aun aquellas agencias que poseen un poder investigativo amplio, incluyendo la facultad de requerir la producción de documentos mediante un subpoena duces tecum, no quedan, en el ejercicio de tal autoridad, “al margen de los postulados constitucionales que informan nuestro ordenamiento”.(19) Esto, pues en determinadas circunstancias un requerimiento de esta naturaleza puede constituir un registro sujeto a los controles que emanan de la Constitución, en particular, de la Sección 10 del Artículo II, que protege contra los ataques abusivos y los registros, las incautaciones y los allanamientos irrazonables, y de la Sección 8 del mismo Artículo, que garantiza la intimidad individual.(20) Esta garantía constitucional está diseñada para proteger la intimidad y dignidad de los seres humanos, amparar sus documentos y otras pertenencias, e interponer la figura de un juez o una jueza entre la ciudadanía y los funcionarios y las funcionarias de las ramas ejecutiva y legislativa para asegurar la razonabilidad en la intervención con la intimidad de la persona.(21)
La protección constitucional no opera automáticamente.(22) Por el contrario, se activa cuando la persona afectada tiene una expectativa razonable de intimidad so-bre el lugar o los artículos registrados.(23) Se trata de un estándar que proviene de la norma federal anunciada en *701 Katz v. U.S., 389 US 347 (1969), en cuanto a la definición sustantiva de lo que constituye una expectativa razonable de intimidad. No obstante, debemos analizarla a la luz de nuestra Constitución, pues, como explica el Juez Asociado Señor Rivera Pérez, “[e]n Puerto Rico, el derecho a la intimidad tiene un alcance más amplio que en el sistema federal de Estados Unidos”.(24) Reforzamos esta expresión recientemente cuando resolvimos que “[e]n nuestro ordenamiento jurídico, esta protección constitucional se considera un valor comunitario de indiscutible jerarquía y, según hemos hilvanado jurisprudencialmente, consagra varios propósitos fundamentales”. (25)
En vista de lo anterior, el criterio rector para evaluar si se ha violado el derecho consagrado en la Cuarta Enmienda de la Constitución de Estados Unidos o en las Secciones 8 y 10 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico es “si la persona afectada alberga una expectativa de intimidad sobre el lugar o artículo que habrá de ser registrado y si tal expectativa es razonable a la luz de los criterios prevalecientes en la sociedad”.(26) La protección constitucional que opera cuando la persona afectada espera razonablemente que se respete su intimidad es fundamental, pues el poder inquisitivo de las agencias administrativas puede, en ocasiones, convertirse en un instrumento de hostigamiento y persecución. Por último, vale señalar que esta protección constitucional está presente tanto en los procesos de naturaleza penal como en los de índole administrativa. Sin embargo, como veremos, el estándar para dirimir la razonabilidad del requerimiento no es el mismo y también dependerá del método investigativo utilizado.(27)
*702 El análisis que se requiere para determinar si existe una expectativa razonable de intimidad que active la protección constitucional contra los registros y allanamientos irrazonables tiene, por consiguiente, dos etapas. La primera conlleva un análisis subjetivo que permite concluir si “el reclamante, según las circunstancias del caso, alberga una expectativa real de que su intimidad se respete [...]”.(28) Si esa expectativa existe, se procederá a la segunda etapa, en la que se realiza un análisis objetivo para determinar “si la sociedad considera razonable tener tal expectativa”.(29) Según los estudiosos, la segunda etapa es la decisiva.(30)
Una vez se determina que existe una expectativa razonable de intimidad, la agencia que exija la producción de documentos utilizando su poder de subpoena duces tecum tendrá que informar de ello a la persona afectada u obtener una orden judicial a esos efectos.(31) En cuanto la notificación, hemos resuelto que esta “deberá ser emitida con razonable anticipación y contener lo siguiente: información específica y detallada que exprese la razón, el propósito y la pertinencia de la solicitud, a la luz de la investigación que se esté llevando a cabo y la disposición legal que faculta a la [entidad gubernamental] en cuestión para realizar tal requerimiento”.(32) El propósito de la notificación es permitir que la persona afectada cuestione el requerimiento ante el foro judicial.
Ya sea porque la agencia solicitó una orden judicial en primera instancia o porque la persona afectada decidió re-tar el requerimiento notificado, el tribunal analizará la ra- *703 zonabilidad del requerimiento a la luz de los criterios si-guientes: (1) si la investigación está dentro de la autoridad conferida por ley a la agencia; (2) si el requerimiento no es demasiado indefinido, y (3) si la información solicitada es razonablemente pertinente al asunto específico bajo investigación,(33) Si bien le corresponde inicialmente a la propia agencia determinar la pertinencia de la información requerida, en caso de que exista controversia sobre ello será el foro judicial el que tomará la determinación final.(34) Este estándar de pertinencia razonable es menos estricto que el de causa probable utilizado en el ámbito penal. Ahora bien, hemos advertido que según los procesos administrativos se asemejen más a los de carácter penal, “más se acercarán los dos géneros de registro”.(35) Por eso, si el objetivo primario de un registro administrativo es ob-tener prueba para un proceso penal, la agencia deberá cumplir con los requisitos exigibles en los procesos de índole criminal. Ahora bien, un registro que se lleva a cabo durante una inspección civil bona fide no necesariamente se invalidará porque la prueba descubierta pueda utilizarse en un proceso penal.(36)
Además de distinguir entre los registros puramente administrativos y aquellos que tienen un contenido penal, nuestro ordenamiento diferencia entre los requerimientos para la producción de documentos y el registro físico de la persona o el lugar. (37) Es decir, la razonabilidad de la actuación de la agencia dependerá del método investigativo utilizado.(38) Por lo tanto, en vez de utilizar una *704 regla mecánica, “[l] a naturaleza, alcance y onerosidad de la intervención gubernamental son elementos más realistas a sopesar”.(39)
En resumen, el análisis judicial dependerá de si se trata de un requerimiento o una incautación tras un registro, de una investigación puramente administrativa o de una que tiene visos de naturaleza penal. Mientras más se aleje el proceso de una investigación criminal y menos intrusiva sea la actuación de la agencia, será más apropiado utilizar el criterio de pertinencia razonable en vez del de causa probable. Por el contrario, mientras más se aleje la inves-tigación de unos fines puramente civiles y más se asemeje a una investigación criminal, aumentará la necesidad de cumplir estrictamente las salvaguardas constitucionales.
Cuando la persona agraviada es quien tiene la información requerida, solicitar tal información constituye suficiente notificación. Cuando la información está en manos de un tercero y es de tal naturaleza que la persona afectada tiene sobre ella una expectativa razonable de intimidad, el requisito de notificación adquiere una importancia sustancial. En ese caso, hemos resuelto que la agencia tiene la obligación de notificar a la persona afectada que se ha hecho el requerimiento al tercero como garantía constitucional de la protección contra registros y allanamientos irrazonables.(40) Es una realidad de la vida contemporánea que la mayor parte de los subpoenas emitidos para obtener documentación se dirigen a terceros que no son las personas investigadas.(41) En esas circunstancias *705 hemos exigido protecciones adicionales a las desarrolladas en la doctrina tradicional sobre requerimientos de infor-mación. (42) Cuando la persona que tiene la información es un tercero que no es objeto de la investigación, la protec-ción judicial ante la intervención gubernamental se torna imperante.
Por último, cabe señalar que la condición de “tercero” que posee información no sucede solamente cuando la información que este tiene se refiere a una persona que es el objeto de la investigación realizada por la agenciad.(43) Lo importante es que la persona cuya información se solicita albergue la expectativa razonable de intimidad sobre tal información. Por eso, estas solicitudes también requieren que se notifique a la persona cuya información se solicita.
HH HH HH
¿Hay una expectativa razonable de intimidad sobre los registros de llamadas telefónicas? En este caso el Estado plantea que no y señala, como su argumento principal, la decisión del Tribunal Supremo de Estados Unidos en Smith v. Maryland, 442 US 735 (1979). En ese caso, el alto Foro federal resolvió que no existe una expectativa razona-ble de intimidad sobre los números discados por una persona.(44) Sin embargo, a poco que analicemos detenidamente esa decisión a la luz de las críticas de estudiosos norteamericanos y puertorriqueños, así como de tribunales supremos estatales y de nuestra propia jurisprudencia, nos damos cuenta que se requiere una contestación distinta a la que el Estado nos propone.
En Smith v. Maryland, supra, el máximo foro federal, mediante votación dividida, resolvió que la instalación y *706 utilización de un aparato llamado pen register —para iden-tificar y guardar los números marcados desde un teléfo-no— no violaba la protección contra registros y allana-mientos irrazonables de la Cuarta Enmienda de la Constitución federal. El Tribunal razonó que el mecanismo no registraba el contenido de las conversaciones y las per-sonas no tenían expectativa de intimidad sobre los núme-ros discados, puesto que accedían a que la compañía de teléfono los anotara para propósitos de facturación. En ese caso, el aparato fue instalado por la compañía telefónica, a petición de la Policía, con el fin de atrapar a un hombre que había asaltado a la dueña del teléfono que se intervino y que la continuaba acosando a través de llamadas amena-zantes y obscenas.
La decisión del Tribunal se basó principalmente en U.S. v. Miller, 425 US 435 (1976). En ese caso, el Tribunal Supremo de Estados Unidos resolvió que no había una expec-tativa razonable de intimidad sobre las transacciones ban-carias, dado que los individuos proveían voluntariamente información financiera a los bancos para el manejo de sus cuentas y de esa forma asumían el riesgo de que estos re-velaran esa información al Estado si este lo solicitaba. Es decir, la decisión en Smith es una consecuencia directa de lo resuelto en Miller.
En RDT Const. Corp. v. Contralor I, supra, consideramos la misma interrogante atendida por el Tribunal Supremo federal en Miller. En aquella ocasión, el Estado solicitó un subpoena duces tecum para que un banco le entregara copia de las cuentas bancarias de una empresa investigada por uso indebido de fondos públicos. El Estado no solicitó una orden judicial ni notificó a la empresa in-vestigada, alegando que, según lo resuelto en Miller, la entidad investigada no tenía una expectativa razonable de intimidad sobre sus transacciones bancarias.
Ante los argumentos del Estado, hicimos un análisis cuidadoso de la decisión federal. En particular, advertimos *707 que la doctrina estadounidense había criticado fuerte-mente esa decisión, señalando su inconsistencia con Katz.(45) Además, resaltamos que el propio Congreso de Es-tados Unidos reaccionó desfavorablemente a esta decisión al aprobar el Right to Financial Privacy Act. (46) Por último, hicimos hincapié en los muchos tribunales supremos esta-tales que rechazaron la doctrina anunciada en “Miller” al amparo de sus respectivas constituciones estatales.(47)
De igual manera, evaluamos la situación planteada en el marco de la Constitución de Puerto Rico. En nuestro análisis, afirmamos la importancia que tienen las transac-ciones bancarias en la vida cotidiana de las personas y lo que estas revelan sobre los patrones, los estilos de vida y la situación económica de los clientes que utilizan los servicios de una institución bancaria. Recalcamos que esta información permite deducir a qué se dedica la persona, los lugares que frecuenta, los bienes que adquiere, el partido al que contribuye, los periódicos y revistas que lee, la iglesia a la cual hace donaciones, las asociaciones a las cuales pertenece, las tiendas y los establecimientos donde compra, los médicos que visita y otra información de naturaleza íntima.(48) Al final, coincidimos con el profesor Chiesa Aponte en que es “difícil armonizar [Miller] con Katz”,(49) y resolvimos que existe una expectativa razonable de intimidad sobre las transacciones bancarias. Rechazamos la doctrina de Miller y adoptamos la posición de varios tribuna-les supremos estatales, el tratadista LaFave, el profesor *708 Chiesa Aponte y el Congreso de Estados Unidos. Más im-portante aún, llegamos a una conclusión acorde a la defi-nición de intimidad contenida en nuestra Constitución.
En vista de lo anterior, para determinar si existe una expectativa razonable de intimidad sobre los registros telefónicos, el punto de partida no es U.S. v. Miller ni Smith v. Maryland. Por el contrario, basamos nuestro análisis en la doctrina adoptada en RDT Const. Corp. v. Contralor I y los casos subsiguientes que la aplican.(50)
En Rullán v. Fas Alzamora, supra, analizamos un requerimiento legislativo para la producción de unas planillas de contribuciones sobre ingresos. En esa ocasión, resolvimos que la persona investigada tenía una expectativa razonable de intimidad sobre dichas planillas, pues de es-tas se podía obtener el mismo tipo de información que qui-simos proteger en RDT Const. Corp. v. Contralor I, supra.(51) En Pueblo v. Loubriel, Suazo, supra, el Departamento de Hacienda llevó a cabo una investigación sobre el paradero de varios cheques que dicha agencia había emitido basados en información falsificada. Como parte de la investigación, Hacienda le requirió a una institución financiera información sobre las cuentas bancarias a las que finalmente fueron a parar sus cheques, en particular, los nombres de los dueños de las cuentas, hojas de depósito, tarjetas de firmas, así como todas las transacciones relacionadas con las cuentas bancarias en donde se habían depo- *709 sitado esos cheques.(52) En esa etapa, la investigación no se había centrado sobre ninguna persona en particular y simplemente se intentaba dar con el paradero de los cheques del Estado.(53) Al resolver, hicimos énfasis en el “derecho que tiene toda persona a conocer el paradero de sus che-ques cuando éstos no son cobrados por sus debidos desti-natarios [...]”.(54) En ese contexto particular resolvimos que no era necesaria la notificación previa para obtener los nombres de los titulares de las cuentas bancarias. Ahora bien, requerimos la notificación previa o la obtención de una orden judicial para tener acceso a información sobre las transacciones relacionadas con las cuentas bancarias identificadas. El derecho a la intimidad, explicamos, “se extiende a toda aquella información suministrada por los individuos a las instituciones bancarias que revelen los pa-trones, los estilos de vida o la situación económica de éstos. Esto incluye las transacciones bancarias de las personas”. (Énfasis suplido).(55)
En cuanto a información relacionada con las llamadas telefónicas, en E.L.A. v. P.R. Tel. Co., 114 DPR 394 (1983), una decisión anterior a RDT Const. Corp. v. Contralor I, supra, examinamos la pertinencia de cierta información a una investigación sobre el uso ilegal de teléfonos que lle-vaba a cabo la Oficina de Asuntos Monopolísticos del De-partamento de Justicia de Puerto Rico. Esa oficina le requirió información a la Puerto Rico Telephone Company (PRTC), con relación a ciertos teléfonos, sobre: (1) el nom-bre del abonado, (2) su dirección actual, (3) la fecha de instalación, (4) si el número no estaba en servicio, (5) el nombre del usuario anterior, y (6) la fecha cuando se dio de baja. La PRTC suplió la información requerida sobre aque- *710 líos usuarios cuyos nombres y direcciones constaban en el directorio telefónico, mas se negó a suministrar la información sobre los números no publicados. El Estado Libre Asociado (ELA) demandó a la PRTC para obtener la informa-ción denegada. Como se trataba de una investigación sobre el uso de ciertos números telefónicos en posible violación a las leyes antimonopolísticas, resolvimos que el requerimiento era pertinente a la investigación, que estaba debidamente autorizada por ley y que la petición era lo suficientemente definida.(56) Aunque nos referimos en nuestra opinión al “choque entre el interés del Estado en obtener acceso a información pertinente a una investigación y el derecho de los individuos a su intimidad” —(énfasis suplido) — ,(57) no resolvimos expresamente si estos tenían una expectativa razonable de intimidad sobre la información requerida.(58) No obstante, analizamos la razonabilidad del requerimiento a la luz de los tres criterios aplicables a los registros gubernamentales en los que un individuo tiene una expectativa razonable de intimidad.
Otra decisión sobre este tema la emitimos en P.R. Tel. Co. v. Martínez, 114 DPR 328 (1983). En aquella ocasión, una persona solicitó una orden dirigida a la compañía te-lefónica para que interceptara su teléfono y determinara la procedencia de las llamadas amenazantes que estaba reci-biendo e identificara el autor o los autores de dichas llamadas. Ante la negativa de la compañía telefónica, re-solvimos que no se trataba de una investigación puramente criminal dirigida contra una persona, sino de una reivindicación del derecho a la intimidad de la persona que *711 recibía las llamadas amenazantes.(59) Por lo tanto, validamos la intercepción.
El Estado hace referencia en su alegato a una decisión de un Tribunal Supremo estatal en la que adopta la posición asumida por el máximo Foro federal en Smith v. Maryland, supra.(60) No obstante, al analizar las demás jurisdicciones de Estados Unidos, como hicimos en RDT Const. Corp. v. Contralor I, supra, notamos que muchos Tribuna-les Supremos estatales han rechazado contundentemente la norma de Smith v. Maryland, supra.(61) Lo que es más, algunos de estos tribunales han resuelto que su rechazo a “Smith” es producto de su rechazo anterior a la norma de “Miller”. (62) Estas decisiones reconocen que el teléfono se ha convertido en una herramienta esencial para llevar a cabo nuestros asuntos personales y rechazan el que al suministrar información sobre llamadas realizadas para propósitos de facturación, los clientes de las compañías telefónicas dejen de tener una expectativa razonable de intimidad frente a los requerimientos del Estado.(63) Estos tribunales estatales han expresado de manera inequívoca su rechazo a Smith y han resuelto que, al amparo de sus respectivas constituciones, existe una expectativa razonable de intimidad sobre los registros de llamadas telefónicas.
Por último, el Estado sostiene que no hay una expecta- *712 tiva razonable de intimidad sobre el registro de llamadas realizadas porque, a diferencia de las planillas o de las transacciones bancarias, el registro no revela el contenido de las llamadas. Nuevamente, ese criterio ha sido rechazado en varias jurisdicciones cuyos tribunales han resuelto, acertadamente, que, al igual que las transacciones bancarias, la lista de números contenidas en una factura de teléfonos permite al Estado descubrir, con relativa facilidad, información privada de las personas,(64) incluyendo, por inferencia, el contenido de la conversación.
Por vía de los registros de llamadas se puede conseguir la misma información que a través de las transacciones bancarias, entiéndase, los lugares que la persona frecuenta, los bienes que adquiere, el partido al que contribuye, los periódicos y revistas que lee, la iglesia a la cual hace donaciones, las asociaciones a las cuales pertenece, las tiendas y establecimientos donde compra, los médicos que visita y otra información de naturaleza íntima. Todo ello nos lleva a concluir que, al amparo de nuestra Constitución, una persona tiene una expectativa razonable de intimidad sobre el registro de llamadas que realiza desde su teléfono. Tal conclusión es el resultado directo de nuestras decisiones en RDT Const. Corp. v. Contralor I (en cuanto a las transacciones bancarias) y Rullán v. Fas Alzamora (en cuanto a las planillas de contribuciones sobre ingreso).
Nuestro rechazo a la doctrina de Miller requiere un rechazo similar a la de Smith. Es evidente que el registro de llamadas telefónicas permite al Estado adquirir el tipo de información que quisimos proteger en RDT Cont. Corp. v. Contralor 7 y en Rullán v. Fas Alzamora. Lo hablado durante una conversación telefónica no es la única fuente de información relacionada con el contenido de nuestras llamadas. A quién llamamos, cuándo lo llamamos, *713 con qué frecuencia lo llamamos y por cuánto tiempo hablamos equivale, sin duda, a contenido. No cabe duda que hay una expectativa subjetiva de intimidad sobre el registro de las llamadas que hace una persona y que la sociedad entiende que tal expectativa es razonable. En ese sentido, como anticipamos en RDT Const. Corp. v. Contralor I, adoptamos la propuesta del profesor Chiesa Aponte: “Ciertamente hay una expectativa razonable a que la compañía telefónica y el banco mantengan confidencial los récords correspondientes a las llamadas telefónicas y las transacciones bancarias”. (Énfasis suplido).(65)
IV
En el caso de autos, el NIE tenía motivos fundados para pensar que alguno de sus agentes había filtrado información a la prensa relacionada con un operativo de la agencia. Recordemos que tal conducta podría constituir delito.(66) Utilizando sus amplios poderes investigativos,(67) la agencia emitió una orden subpoena duces tecum para que Cingular produjera las listas de las llamadas hechas por los oficiales del NIE que participaron en el operativo desde sus teléfonos oficiales. Por lo tanto, en cuanto a ellos, no hacía falta obtener una orden judicial previa o notificar a los agentes.
Al examinar las listas, la agencia encontró un número de teléfono ajeno a los suyos e identificó que uno de los inspectores había hecho tres llamadas a ese número, tres horas antes del operativo y mientras este se llevaba a cabo. Acto seguido, solicitó a Cingular, mediante una otra orden subpoena, que produjera el nombre y la información perso *714 nal del usuario de ese número, así como una relación de todas las llamadas realizadas y recibidas por este en el mes de febrero. No se notificó de ello al señor Weber, usuario del teléfono. Según explicamos, una persona tiene una expec-tativa razonable de intimidad sobre el registro de llamadas de su teléfono, por lo cual el NIE debió haberle notificado al demandante sobre el registro u obtener una orden judicial que le autorizara a requerir dicha información.
Ahora bien, el incumplimiento de la agencia con esta obligación legal no resuelve del todo la controversia ante nuestra consideración. Recordemos que el efecto principal de concluir que hay una expectativa razonable de intimi-dad sobre alguna información solicitada por el Estado es imponer a los tribunales la obligación de analizar la razo-nabilidad del requerimiento a la luz de los tres criterios previamente expuestos. Así, deberán examinar si la inves-tigación estaba dentro de la autoridad conferida por ley a la agencia, si el requerimiento no era demasiado indefinido y si la información solicitada era razonablemente perti-nente al asunto específico bajo investigación. En este caso particular, no podemos perder de perspectiva que la solici-tud no es un requerimiento meramente administrativo, pues la agencia investigaba la comisión de un delito. Por lo tanto, si bien no se requiere un estándar de causa probable como comúnmente se utiliza en el contexto penal, debemos requerir el cumplimiento estricto y riguroso de los requisi-tos aplicables a los requerimientos administrativos.
El objeto de la investigación del NIE en este caso no era el señor Weber. El Estado ha sido enfático en ese sentido y ha alegado consistentemente que, una vez descubrió la identidad del señor Weber, cesó toda investigación en cuanto a él. El señor Weber era, pues, un tercero en cuanto a la investigación se refiere y el tenedor de la información solicitada, Cingular, también lo era. Hemos visto que las protecciones constitucionales son más fuertes cuando el Estado requiere información a un tercero sobre una per *715 sona o entidad que, a su vez, es un tercero en cuanto a la investigación que lleva a cabo la agencia.
En vista de lo anterior, ¿era razonable que se le requi-riera a la compañía telefónica que informara el nombre del usuario del celular? ¿Era razonable el requerimiento en cuanto al registro de las llamadas que se hicieron durante todo el mes de febrero desde dicho celular? En cuanto a la solicitud del nombre del usuario, entendemos que la situa-ción es similar a la de los cheques del Departamento de Hacienda en Pueblo v. Loubriel, Suazo, supra. Es decir, el Estado tenía derecho a investigar la identidad de la persona a quien uno de sus agentes llamó desde su teléfono oficial poco antes y durante el operativo. Se trata, pues, de un requerimiento enteramente razonable.
No podemos decir lo mismo en cuanto al requerimiento de entrega de la factura y, con ello, del historial de llama-das del celular. Si bien el NIE tiene amplias facultades investigativas y el requerimiento a Cingular no era dema-siado indefinido, las facturas del uso que el señor Weber dio al teléfono durante todo el mes de febrero no son razonable-mente pertinentes al asunto específico bajo investigación. A la luz de lo anterior, se violó la intimidad del señor Weber al no notificarle, al no ser razonable ni obtenerse una or-den judicial para tal requerimiento.
Las sentencias del Tribunal de Primera Instancia y del Tribunal de Apelaciones llegaron a conclusiones distintas a las que hoy elaboramos. Ambos tribunales reconocieron que el Tribunal Supremo no se ha pronunciado sobre el derecho a la intimidad en el ámbito de los registros de llamadas telefónicas en manos de terceros, sin embargo, concluyeron categóricamente que el señor Weber no tenía una expectativa de intimidad sobre el registro de llamadas de su teléfono porque su patrono era quien recibía y pa-gaba la factura del teléfono. De esa forma, al evaluar la prueba presentada por el señor Weber, los foros inferiores partieron de la premisa de que los reclamos de este sobre *716 la violación a su derecho a la intimidad no tenían base en nuestro ordenamiento. Nos preocupa el efecto de esta con-clusión sobre la evaluación que debían hacer ambos tribu-nales respecto a la prueba presentada por el señor Weber sobre las angustias mentales que sufrió a raíz de los acontecimientos de este caso.(68)
Hemos resuelto que cuando un ciudadano presenta una reclamación alegando que el Estado le ha violado algún derecho constitucional, los tribunales estamos obligados a proveer los remedios que vindiquen efectivamente el agra-vio sufrido y aminoren el daño provocado por el Estado.(69) Al resolver que el señor Weber albergaba una expectativa razonable de intimidad sobre el registro de llamadas de su teléfono móvil y que el Estado actuó de manera irrazona-ble, se configura el elemento de culpa o negligencia exigido por el Artículo 1802 del Código Civil, 31 LPRA sec. 5141. Resta evaluar entonces la prueba de daños y causalidad presentada por el señor Weber a la luz de la violación de su derecho a la intimidad.
En virtud de lo anterior, revocamos la sentencia dictada por el Tribunal de Apelaciones. Procede entonces que de-volvamos este caso al foro primario para que evalúe la prueba presentada por el señor Weber sobre los daños su-fridos a la luz de lo aquí resuelto sobre la violación de su derecho a la intimidad.

Se dictará Sentencia de conformidad.

El Juez Asociado Señor Martínez Torres emitió una opi-nión disidente, a la cual se unieron la Jueza Asociada Se- *717 ñora Pabón Charneco y el Juez Asociado Señor Kolthoff Caraballo. La Juez Asociada Señora Rodríguez Rodríguez y el Juez Asociado Señor Rivera García no intervienen.

 El señor Weber recibió una llamada anónima en la cual le informaron sobre un operativo en un negocio de DVD, por lo que llegó al lugar con un equipo de televisión poco tiempo después que el operativo concluyera. Luego llamó a la Oficina de Prensa del Departamento de Justicia para solicitar más información. Al día si-guiente se celebraría una conferencia de prensa sobre los resultados del operativo, la cual fue cancelada.

 Divulgar información sobre las operaciones del NIE sin autorización constituye un delito grave. 3 LPRA see. 1381 (derogada); Artículo 82(a) del Plan de Reorganización Núm. 5 de 2011, Plan de Reorganización del Departamento de Justicia de 2011.

 Aunque el patrono del señor Weber asigna y paga el teléfono, el reportero tiene derecho a utilizarlo tanto para gestiones profesionales como personales. Es decir, es su teléfono celular. Incluso, en el registro de llamadas obtenido por el NIE aparece como nombre de usuario del móvil el del señor Weber y no el de Univisión. Apéndice de la Petición de certiorari, págs. 881-895.

 Demanda de 25 de agosto de 2004, Apéndice de la Petición de certiorari, págs. 650-655.

 El informe pericial del psiquiatra que evaluó al señor Weber indica que sufrió de un síndrome de angustia postraumática, caracterizado por sensaciones de ansie-dad, temor, ira e hipervigilancia, que se intensifican al no saber si situaciones simi-lares de invasión a su privacidad se podrían estar repitiendo y al combinarse con sus recuerdos como víctima de la persecución del Estado durante el gobierno militar del dictador Augusto Pinochet en Chile. El psiquiatra concluyó que la profundidad e intensidad de estos estados anímicos alterados se evidenciaba por su presencia aún después de casi dos años desde que el señor Weber descubriera la actuación del Estado. Apéndice de la Petición de certiorari, págs. 872-877.

 Sentencia del Tribunal de Primera Instancia, Apéndice de la Petición de certiorari, págs. 554-574.

 Sentencia del Tribunal de Apelaciones de 30 de marzo de 2010, Apéndice de la Petición de certiorari, págs. 17-36.

 El peticionario se refiere a las disposiciones sobre protección de la privacidad de los usuarios y de la información sobre su utilización de los servicios en la Ley de Telecomunicaciones federal, según enmendada, 47 USCA see. 222.

 Discute el caso Smith v. Maryland, 442 US 735 (1979), que abordaremos próximamente en esta Opinión.

 Por otro lado, el Estado explicó que los pleitos por daños contra el Estado por acciones culposas o negligentes que realiza un funcionario en su capacidad oficial y dentro del marco de sus funciones, no proceden cuando se basan en actos ocurridos al desempeñar una función discrecional —como la de los fiscales de procesar crimi-nalmente a un ciudadano— aun cuando baya abuso de discreción. Añadió que, de proceder la causa de acción, la compensación máxima sería de $75,000. Alude a los Artículos 2 y 6(a) de la Ley de Reclamaciones y Demandas contra el Estado, 32 LPRA sees. 3077 y 3081(a). No discutiremos el primer planteamiento pues, como señala el propio alegato del Estado, el fiscal que requirió la información no ejercía su discre-ción de procesar criminalmente a un ciudadano respecto al señor Weber. Además, la discreción de los fiscales es limitada, ya que al investigar no se pueden violar los derechos constitucionales de los ciudadanos, como veremos más adelante. Tampoco atenderemos el planteamiento sobre la compensación máxima bajo la Ley de Recla-maciones y Demandas contra el Estado, pues referiremos la determinación sobre los daños al foro de instancia.

 López Tristani v. Maldonado, 168 DPR 838, 849 (2006); Arroyo v. Rattan Specialties, Inc., 117 DPR 35, 64 (1986).

 Art. II, Secs. 8 y 10, Const. ELA, LPRA, Tomo 1. Nuestra Constitución también prohíbe interceptar las comunicaciones telefónicas.

 Enmda. IV, Const. EE. UU., LPRA, Tbmo 1.

 Pueblo v. Santiago Feliciano, 139 DPR 361, 385-386 (1995). Esta protección, que limita la intervención gubernamental, es fundamental porque el derecho a la intimidad garantiza la soberanía de la persona sobre su mente y su espacio inmediato, y evita un efecto disuasivo sobre la libertad de expresión, que es esencial en una sociedad democrática. Id., pág. 395. Véase, también, E.L.A. v. Coca Cola Bott. Co., 115 DPR 197, 205-209 (1984).

 Véase H.M.C.A. (P.R.), Inc., etc. v. Contralor, 133 DPR. 945, 959 (1993).

 Íd., pág. 968.

 Íd., págs. 968-969.

 B. Schwartz, Administrative Law, 3ra ed., Toronto. Ed. Little, Brown and Co., 1991, pág. 125.

 H.M.C.A. (P.R.), Inc., etc. v. Contralor, supra, pág. 969. Véase, también, RDT Const. Corp. v. Contralor I, 141 DPR 424, 433 (1996).

 Pueblo v. Loubriel, Suazo, 158 DPR 371, 379 (2003). Ambas protecciones constitucionales están íntimamente relacionadas. Acarón et al. v. D.R.N.A., 186 DPR 564, 575 (2012); Rullán v. Fas Alzamora, 166 DPR 742, 770-771 (2006).

 Rullán v. Fas Alzamora, supra, pág. 772.

 Íd.

 Pueblo v. Loubriel, Suazo, supra, pág. 379.

 Rullán v. Fas Alzamora, supra, pág. 771.

 Acarón et al. v. D.R.N.A., supra, pág. 573.

 RDT Const. Corp. v. Contralor I, supra, pág. 436.

 H.M.C.A. (P.R.), Inc., etc. v. Contralor, supra, pág. 969; E.L.A. v. Coca Cola Bott. Co., supra, págs. 205, 207 y 212.

 López Tristani v. Maldonado, supra, pág. 852.

 Íd.

 E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1991, Vol. I, pág. 345, citando la opinión concurrente del Juez Harlan en Katz v. U.S., 389 US 347 (1967).

 Rullán v. Fas Alzamora, supra, pág. 773; RDT Const. Corp. v. Contralor II, 114 DPR 861, 864 (1996).

 Rullán v. Fas Alzamora, supra, pág. 778.

 RDT Const. Corp. v. Contralor I, supra, pág. 433; E.L.A. v. Coca Cola Bott. Co., supra, págs. 208-209. En ese sentido, un requerimiento excesivamente amplio o impertinente al asunto bajo investigación sería irrazonable.

 H.M.C.A. (P.R.), Inc., etc. v. Contralor, supra, pág. 970; Comisionado de Seguros v. Bradley, 98 DPR 21 (1969).

 E.L.A. v. Coca Cola Bott. Co., supra, pág. 213.

 Íd.

 Véase H.M.C.A. (P.R.), Inc., Etc. v. Contralor, supra, pág. 967.

5) RDT Const. Corp. v. Contralor I, supra, pág. 433.

 E.L.A. v. Coca Cola Bott. Co., supra, pág. 216.

 Pueblo v. Loubriel, Suazo, 158 DPR 371, 377 (2003). “[E]n aquellos casos en que instituciones gubernamentales tengan el poder para compeler a personas a su-ministrar información sobre la cual terceros pueden abrigar un derecho a la intimi-dad [estas] tienen, necesariamente, que notificar al agraviado o, en la alternativa, exigir los documentos a través de una orden judicial”. Íd., pág. 380.

 W.R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, Ira ed., Ed West, Sec. 4.13, citando, a su vez, a Slobogin, Subpoenas and Privacy, 54 DePaul L. Rev. 805 (2005).

 Véase H.M.C.A. (P.R.), Inc., Etc. v. Contralor, supra; RDT Const. Corp. v. Contralor I, supra; Rullán v. Fas Alzamora, supra.

 Véase Comisionado de Seguros v. Bradley, supra.

 Smith v. Maryland, supra.

 La principal fuente de crítica a esta decisión provino del reconocido tratadista LaFave. RDT Const. Corp. v. Contralor I, supra, pág. 437, citando a W.R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, 2da ed., Minnesota, Ed. West Publishing Co., Sec. 2.7(c), págs. 511 — 512.

 12 USCA secs. 3401-3422; RDT Const. Corp. v. Contralor I, supra, pág. 438 esc. 3.

 RDT Const. Corp. v. Contralor I, supra, págs. 438-439.

 Íd., págs. 441-442.

 Chiesa Aponte, op. cit., pág. 496. En RDT Const. Corp. v. Contralor I, supra, pág. 443, citamos con aprobación las expresiones del profesor sobre la expectativa razonable que tienen las personas de que los bancos mantendrán confidenciales los registros correspondientes a las transacciones bancarias.

 Cabe mencionar que la controversia atendida por el Tribunal Supremo federal en Smith v. Maryland, supra, se asemeja más a nuestra decisión en P.R. Tel. Co. v. Martínez, 114 DPR 328 (1983), en la que validamos una intercepción del propio teléfono, solicitada por una persona que alegadamente recibía llamadas amenazantes. Véase la discusión en el texto más adelante.

 Además, expresamos que nuestra decisión en RDT Const. Corp. v. Contralor I, supra, partía de la premisa de que “en conformidad con la protección que la Constitución de [Puerto Rico] provee a los ciudadanos contra intervenciones irrazonables del Estado, ni las empresas ni los individuos tienen por qué presumir que al proveer información a los bancos están renunciando a su expectativa de intimidad sobre ella”. Rullán v. Fas Alzamora, supra, pág. 773. Es decir, rechazamos la lógica utilizada en U.S. v. Miller, supra —y posteriormente en Smith v. Maryland, supra— en cuanto al efecto de permitirle acceso a la institución financiera —o a una compañía de teléfono— a las transacciones bancarias o telefónicas.

 Pueblo v. Loubriel, Suazo, supra, pág. 376.

 “La información requerida no se refería a las cuentas de individuos particulares, sino que se referíala las cuentas en donde los cheques emitidos por Hacienda habían sido depositados”. íd., pág. 382.

 Íd.

 Íd., pág. 383.

 En particular, hicimos referencia a “la clara necesidad de acceso a información estrictamente limitada, como la qne se requiere aquí, para el cumplido ejercicio del poder investigativo del Estado bajo la autoridad concedida por mandato expreso de ley”. (Énfasis suplido). E.L.A. v. P.R. Tel. Co., 114 DPR 394, 404 (1983).

 Íd., pág. 401.

 Recordemos que en ese caso el Estado no solicitó el registro de llamadas, sino información tendente a identificar los titulares de los números investigados.

 Íd., págs. P.R. Tel. Co. v. Martínez, supra, págs. 340-341.

 El Estado Libre Asociado (ELA) cita a State v. Johnson, 131 P.3d 173 (Oregon 2006), y una decisión de un tribunal apelativo de Florida. Otros estados no mencionados en el alegato del ELA han copiado la norma federal. Véase State v. Valenzuela, 536 A.2d 1252 (New Hampshire 1987).

 Entre estos, véanse: Com. v. Melilli, 555 A.2d 1254 (Penn. 1989); State v. Rothman, 779 P.2d 1 (Hawaii 1989); Richardson v. State, 865 S.W.2d 944 (Texas 1997); People v. Sporleder, 666 P.2d 135 (Col. 1983); State v. Hunt, 450 A.2d 952 (N. J. 1982); State v. Gunwall, 720 P.2d 808 (Wash. 1986); State v. Thompson, 760 P.2d 1162 (Idaho 1988). Véase, además, LaFave, op. cit, 2da ed., 1987, Sec. 2.7(b), pág. 507.

 Charnes v. DiGiacomo, 612 P.2d 1117 (Col. 1980).

 State v. Hunt, supra, págs. 955-956; People v. Sporleder, supra, pág. 141; Richardson v. State, supra, pág. 950.

 Véanse, por ejemplo: Com. v. Melilli, supra; People v. Sporleder, supra; State v. Hunt, supra.

 Chiesa Aponte, op. cit., pág. 496.

 3 LPRA sec. 138l.

 Véase Ley Núm. 38 de 13 de julio de 1978 (3 LPRA sec. 138 et seq.), particularmente los Artículos 4 y 7 (3 LPRA secs. 138c y 138f); Arts. 68 y 69 del Plan de Reorganización del Departamento de Justicia de 27 de diciembre de 2011.

 El expediente del caso no está desprovisto de evidencia sobre daños. Por ejemplo, en su determinación de hecho número 34, el propio Tribunal de Primera Instancia menciona que la impresión diagnóstica del doctor Víctor Liado fue de una puntuación de GAF 60 (GAF — Global Assesment of Functioning), entre la frontera de una condición leve y moderada. Sentencia del Tribunal de Primera Instancia, Apéndice de la Petición de certiorari, pág. 560. Véase, además, el Informe Psiquiátrico Pericial y el testimonio del Dr. Víctor José Liado Díaz, id., págs. 872-877 y 139-165.

 Rodríguez Cruz v. Padilla Ayala, 125 DPR 486 (1990); Noriega v. Gobernador, 122 DPR 650 (1988).